IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW MARK FISHER,<br><br>      Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No. 20-1467 |

ORDER

AND NOW, this 21st day of September 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on June 7, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on May 6, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner") for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**I.    Background**

As a child, Andrew Mark Fisher ("Plaintiff") received supplemental security income ("SSI") due to disability.  (R. 15).  When he turned eighteen, his benefits eligibility was reevaluated as is required by law, 20 C.F.R. § 416.987(a).  (R. 15).  As a result of reevaluation, Plaintiff was found not disabled as of May 24, 2018.  (R. 15).  Plaintiff eventually challenged that decision before an Administrative Law Judge ("ALJ") at a hearing on July 30, 2019.  (R. 15).  In a decision dated August 27, 2019, the ALJ agreed that Plaintiff was no longer disabled as of May 24, 2018 and had not become disabled again since that time.  (R. 25).  That decision

became the final agency decision when the Appeals Council declined to review the matter. 20 C.F.R. § 416.1481. Plaintiff has sought the Court's review (Doc. No. 1) and now pending before the Court are his and the Commissioner's motions for summary judgment.

## II.     Standard of Review

The Court's review is limited—the final agency determination must be upheld unless "it is not supported by substantial evidence in the record." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The substantial evidence standard is not particularly demanding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). It requires only such evidence as would satisfy a "reasonable mind." *Rutherford*, 399 F.3d at 552.

When individuals who received SSI benefits as children are reevaluated for disability at age eighteen, they are subject to the rules that apply to adults who file new applications for SSI benefits. 20 C.F.R. § 416.987(b). To be found disabled, a claimant must have an impairment that, singly or in combination with other impairments, is "severe." *Id.* § 416.920(c). When a claimant suffers from at least one severe medically determinable impairment, the Commissioner will consider whether his "impairment(s) meets or equals a listed impairment." *Id.* § 416.920(d). At this step in the evaluation, a positive finding ends the inquiry in the claimant's favor. *Id.* When the Commissioner does not find a listed impairment, the next task is to determine the claimant's "residual functional capacity [("RFC")] based on all the relevant medical and other evidence in [the] case record." *Id.* § 416.920(e). Using the RFC, the Commissioner determines whether the claimant can return to past relevant work, *id.* § 416.920(f), or adjust to other appropriate work. *Id.* § 416.920(g). If no work is available to the claimant, he will be found disabled. *Id.*

### III.  The ALJ's Decision

The ALJ determined that Plaintiff suffered from six severe, medically determinable impairments: generalized anxiety disorder, borderline Asperger's, social communication disorder, dyslexia, attention deficit hyperactivity disorder, and borderline intellectual functioning disorder. (R. 17).[1] Having found multiple severe impairments, the ALJ considered whether any of Plaintiff's impairments met or equaled the criteria for one of the presumptively disabling impairments listed in the regulations. (R. 17).[2] Because Plaintiff did not demonstrate the criteria of any listed impairment, the ALJ continued to the next steps in the evaluation.

To determine whether work would be available to Plaintiff, the ALJ was required to first determine Plaintiff's RFC. (R. 20). To that end, the ALJ considered Plaintiff's alleged symptoms and limitations as recounted by both Plaintiff and his mother. They alleged Plaintiff had difficulty remembering and completing tasks like chores and struggled to understand and follow instructions. (R. 20—21). Plaintiff indicated that he occasionally argued with his mother, but "got along" with friends, and that he usually worked one day out of the week. (R. 21).

To his consideration of Plaintiff's alleged symptoms and limitations, the ALJ added his consideration of Plaintiff's objective medical record. (R. 21). He noted indicia in the record that

---

[1]  Plaintiff's other medically determinable impairments caused only minimal limitations and were therefore found not severe. (R. 17).

[2]  At this step, the ALJ assessed the extent of Plaintiff's limitations in four areas of functioning. (R. 18). He found Plaintiff suffered only moderate limitations in "understanding, remembering, or applying information;" "interacting with others;" the "ability to concentrate, persist, or maintain pace;" and "in his ability to adapt and manage himself." (R. 18). The ALJ also found Plaintiff displayed more than a "minimal capacity to adapt to changes in . . . environment" because Plaintiff could shop, take public transit, and work part-time. (R. 19). Plaintiff's ability to "take care of his personal needs" and his verbal IQ score also conflicted with listed impairment criteria, ruling out the possibility that Plaintiff would be found disabled at this step in the inquiry. (R. 20).

Plaintiff had difficulty with remote memory, but further noted that mental status examinations showed "normal findings" for Plaintiff's "affect, appearance, speech, recent memory, insight, judgment, thought content, [and] thought processes." (R. 21). Such findings and Plaintiff's self-reported activities of daily living—shopping, light cooking, chores, and playing video games with friends—convinced the ALJ that Plaintiff had "a higher degree of functioning and ability to concentrate than alleged." (R. 21). To that end, he further noted that Plaintiff was able to use public transportation without assistance and had stopped taking his ADHD medication. (R. 21).

Addressing the medical and nonmedical source statements in the record, the ALJ started with his consideration of Plaintiff's mother's statement. He found her report that Plaintiff could "prepare simple meals, use public transportation, go grocery shopping, play video games, and go out with friends," more compelling than her description of Plaintiff as struggling to remember and complete tasks and understand and follow instructions. (R. 22). The ALJ found the evaluation provided by Dr. Newman, who opined that Plaintiff would be moderately limited in following complex instructions and making complex work decisions, partially persuasive. (R.22). The ALJ explained that Dr. Newman failed to support some of his findings and that his opinion was not totally consistent with other evidence in the record. (R. 22).

The ALJ found Dr. Petrick's neuropsychological evaluation of Plaintiff, wherein Dr. Petrick opined that Plaintiff might require a job coach, not persuasive. (R. 22). The ALJ explained that Dr. Petrick's findings were unsupported, lacking in detail, and inconsistent with the rest of the record "which show[ed] that the claimant [could] sustain an ordinary routine without special supervision." (R. 22). However, the ALJ was persuaded by the opinion of Dr. Valorie Rings. (R. 22—23). Dr. Rings found Plaintiff was moderately limited in the four areas of mental functioning that were relevant to the ALJ's listings determination. (R. 22, 1200). Dr.

4

Rings also found that Plaintiff could "understand, retain, and follow simple instructions" and further opined that he could "maintain socially appropriate behavior and sustain an ordinary work routine without special supervision." (R. 23). The ALJ determined that these opinions were consistent with evidence in the record that Plaintiff "does everything he is asked when working at his current job and that he completes tasks in a timely manner." (R. 23). Finally, the ALJ considered the opinion provided by State agency psychological consultant, Dr. Schiller. (R. 23). The ALJ found that some of Dr. Schiller's opinions, *e.g.*, that Plaintiff could perform routine, non-complex activities, were consistent with other evidence in the record. (R. 23). Other opinions, like Dr. Schiller's opinion that Plaintiff was mildly limited in his interactions with others, were set aside for lacking support and inconsistency with other evidence. (R. 23).

From this evidence, the ALJ found that Plaintiff's RFC should include work at all exertional levels with modest limitations. (R. 20). Plaintiff could only "perform simple, routine and repetitive tasks" and make "simple work-related decisions." (R. 20). The ALJ limited Plaintiff to occasional interaction with supervisors, coworkers, and the public, and "few changes in a routine work setting," *i.e.*, "a stable work environment where work place and work process remain generally the same from day to day." (R. 20). Using this RFC, the ALJ determined Plaintiff could work as a hand packager, assembler, or grocery bagger. (R. 24). Therefore, he found Plaintiff to be not disabled. (R. 24—25).

IV.    **Legal Analysis**

Plaintiff requests reversal of the ALJ's decision with reinstatement of benefits or remand. He argues corrective action is appropriate because the ALJ's decision is not supported by substantial evidence. More specifically, he argues the ALJ failed to appropriately consider medical and nonmedical source statements in the record that demonstrate he is more significantly

limited in his work ability than the ALJ's decision would suggest. The Commissioner argues Plaintiff is merely asking for this Court to substitute its own fact finding for that of the ALJ. Having considered these arguments, the final decision, and the record, the Court finds the ALJ's decision problematically lacks any discussion of a statement provided by Plaintiff's teacher of four years, Ms. Hopper. Accordingly, the Court will order remand of this matter for further administrative proceedings.

When ALJs consider whether a claimant is disabled, they consider "all of the evidence relevant to [the] claim." 20 C.F.R. § 416.920b. Pursuant to the regulations that are applicable to claims filed on or after March 27, 2017, ALJs need not afford medical opinion evidence or prior administrative medical findings any particular weight. *Id.* § 416.920c(a). Rather, ALJs are expected to consider such evidence and "evaluate [its] persuasiveness" using enumerated factors. *Id.* The most important factors are whether the opinions/findings are supported and consistent with other evidence. *Id.* Also under the new regulations, ALJs are "not required to articulate how [they] considered evidence from nonmedical sources using" the same requirements that apply to medical opinions and prior administrative medical findings. *Id.* § 416.920c(d).

An ALJ's discussion of the evidence "should be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Without sufficient explanation, *i.e.*, a "statement of reasons or findings," reviewing courts are hindered in their "statutory function of judicial review" and risk "usurp[ing] . . . administrative functions." *Id.* at 705. An ALJ's discussion of the evidence should include "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Id.* Otherwise reviewing courts are at a loss as to whether "significant probative evidence was not credited or simply ignored." *Id.* Acknowledgement of

the rejected evidence should be accompanied by "some explanation." *Id.* at 706. This explanation should be sufficiently detailed for reviewing courts to ensure that "the reasons for rejection" were not "improper," as "it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason." *Id.* at 706—07.

The evidence at issue in this matter includes a statement provided by Ms. Hopper, Plaintiff's teacher. (Doc. No. 14, pg. 18).[3] Plaintiff argues that Ms. Hopper's statement demonstrates that he was less able to independently function than his RFC suggested. He further argues that the ALJ's failure to consider Ms. Hopper's statement is contrary to Social Security Ruling 11-2P, "Documenting and Evaluating Disability in Young Adults." 2011 WL 4055665 (S.S.A. Sept. 12, 2011).

SSR 11-2P explains how the Commissioner evaluates disability in "people between the ages of 18 to approximately 25." *Id.* at *2. Although claimants in this age bracket are evaluated for disability pursuant to the rules that apply to adults, the evidence available in young adult cases is "generally the same as, or similar to, the evidence" available in older adolescent cases. *Id.* at *4. Further, evidence from nonmedical sources "who know and have contact with the young adult" are useful in "evaluat[ing] the severity and impact of a young adult's

---

[3] Plaintiff also challenges the ALJ's consideration of other medical and nonmedical source statements. He argues that evidence from Dr. Faber, Dr. Petrick, and Dr. Rings shows, contrary to the ALJ's findings, that he would struggle to hold a job consistently. He contends that his doctors' findings corroborate his and his mother's testimony that it is difficult for him to understand instructions, maintain concentration, and stay on task. The Commissioner responds that the ALJ provided adequate explanations for the persuasiveness he afforded medical opinion evidence in the record, and that Plaintiff is merely asking the Court to reweigh that evidence. The Court acknowledges that the ALJ explained his consideration of Plaintiff's mother's description of his difficulties as well as the persuasiveness he afforded medical source statements in the record. Because the Court is ordering remand it need not independently determine whether the ALJ's consideration of this other evidence was deficient, but the Court instructs the Commissioner to address whether the value afforded to this evidence will change upon consideration of Ms. Hopper's evaluation.

impairment(s)." *Id.* at *5. These nonmedical sources can include family members and educators. *Id.* Such persons can provide valuable information for discerning a young adult's limitations, such as whether a young adult generally requires "help from other people . . . to perform day-to-day activities." *Id.* at *8. An individual who requires extra help would be limited in his ability to work independently. *Id.*

     Ms. Hopper's statement appears to be probative of Plaintiff's ability to work independently. It appears on a teacher questionnaire she completed shortly before Plaintiff was found to be not disabled, on March 19, 2018 concerning Plaintiff's "overall functioning." (R. 663). Therein, she indicated that though Plaintiff was in the twelfth grade, his reading, math, and written language levels were at fifth, eighth, and second grade levels, respectively. (R. 663). She indicated that, compared to other children of the same age without impairments, Plaintiff had an obvious problem focusing long enough to finish assigned work, completing class and homework assignments, completing work without careless mistakes, and finishing his work in a timely manner. (R. 665).[4] Ms. Hopper added that Plaintiff was not a distraction to others but distracted himself and "need[ed] prompting to stay on task and complete his work independently and in a timely manner." (R. 665). She further indicated that Plaintiff had a "slight problem" in knowing when to ask for assistance and needed to be "prompted to ask for help during schoolwork," but did well regarding asking for other needs. (R. 668).

     Ms. Hopper's statements bear on whether Plaintiff required extra help and were thus relevant to whether Plaintiff was limited in his ability to function independently. It is therefore

---

[4] Ms. Hopper ranked Plaintiff's problems according to a scale provided on the questionnaire. (R. 664). The scale ranked difficulty from 1—5 as follows: (1) no problem, (2) a slight problem, (3) an obvious problem, (4) a serious problem, and (5) a very serious problem. (R. 664).

problematic that the ALJ failed to address Ms. Hopper's questionnaire, even if only to reject it. As indicated above, the ALJ acknowledged that Plaintiff complained of difficulty concentrating and following instructions but found those complaints were not borne out by the record. (R. 21). The ALJ found Plaintiff's complaints were overstated notwithstanding Plaintiff's mother's representations of his difficulties and Dr. Petrick's opinion that "[d]epending on the position, [Plaintiff] may need a job coach." (R. 1180, 22). The ALJ dismissed that evidence because he found it to be inconsistent with the rest of the record (R. 22) and formulated an RFC that did not account for on-the-job assistance. (R. 20, 23). From this analysis, the Court cannot tell whether the Ms. Hopper evidence was "not credited or simply ignored." *Cotter*, 642 F.2d at 705.

The Commissioner argues remand is unnecessary for several reasons. The Commissioner points out that Ms. Hopper's statement predates redetermination of Plaintiff's disability status. The Commissioner also argues Ms. Hopper's evaluation is inapposite because she evaluated Plaintiff's limitations with domains of functioning that are used for children's SSI claims. Next, the Commissioner contends that, under the new regulations, ALJs are not required to articulate how they consider nonmedical source statements. And, in the same spirit, the Commissioner argues that ALJs are not required to cite every piece of evidence in the record, notwithstanding what SSR 11-2P counsels for young adult cases. Finally, the Commissioner argues that the limitations suggested by Ms. Hopper's statements are adequately reflected in the RFC such that further consideration of that evidence would have no impact on the outcome of this case.

The Court is unconvinced. While Ms. Hopper evaluated Plaintiff before he was found no longer disabled, evidence outside the pertinent time period can nevertheless be relevant to the disability evaluation. *See Trudgen v. Saul*, No. CV 20-735, 2021 WL 3883977, at *1 n.1 (W.D. Pa. Aug. 31, 2021) (citing *Peresolak v. Astrue*, No. 2:12CV921, 2013 WL 5302292, at *5 (W.D.

Pa. Sept. 19, 2013)). Nor does Ms. Hopper's use of the domains of functioning that apply to children seeking SSI benefits render her reflection on Plaintiff's abilities irrelevant to his claim. As is indicated in SSR 11-2P, evidence that is usually available to young adults like Plaintiff is "generally the same as, or similar to" evidence ALJs consider when they make disability determinations for adolescent children. 2011 WL 4055665, at *4.

Further, the rules that apply to the Commissioner's consideration of nonmedical source statements for claims filed on or after March 27, 2017 do not permit rejecting probative evidence without explanation. While the new rules relieve ALJs from the burden of articulating their consideration of nonmedical source statements using the same standards that apply to medical opinions and prior administrative medical findings, 20 C.F.R. § 416.920c(d), that does not constitute permission to ignore relevant evidence. *Id.* § 416.920(e). *But see Kyra H. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-CV-01979-AC, 2020 WL 2216912, at *19 n.8 (D. Or. May 7, 2020) (commenting that, pursuant to the new rules, ALJs would no longer be required to "provide reasons germane to lay witnesses to reject their testimony"). In this case, Ms. Hopper's evaluation was relevant to the issue of Plaintiff's functional limitations and thus should have been acknowledged. *Cotter*, 642 F.2d at 705—07.

The Court does not imply that ALJs must address every piece of evidence in the record, particularly where it is cumulative of other evidence the ALJ has adequately addressed. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (explaining that the ALJ did not err in failing to discuss EMG results which "merely confirmed" findings from an earlier MRI where the ALJ specifically discussed the MRI results); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Neither must ALJs discuss evidence that has no probative value. *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 158 (3d Cir. 2013) (explaining that where medical records omitted

from the ALJ's decision were not probative of the "central inquiry" of whether the claimant was disabled independent of drug and alcohol use, their omission did not constitute a harmful oversight). However, Ms. Hopper's evaluation was probative of Plaintiff's ability to function independently and does not appear to be repetitive of other evidence in the record.

      The Court is further unconvinced that omission of Ms. Hopper's evaluation was harmless. Pursuant to the doctrine of harmless error, an administrative decision may be affirmed despite an oversight or error when it is evident that the flaw "had no effect on the outcome of the case." *Pack v. Comm'r of Soc. Sec.*, No. CV 20-1128, 2021 WL 3682151, at *2 n.2 (W.D. Pa. Aug. 19, 2021). However, because the Commissioner's decisions must rise of fall on their stated rationale, *Fargnoli*, 247 F.3d at 44 n.7 (citing *SEC v. Chenery Corporation*, 318 U.S. 80 (1943)), the doctrine of harmless error must be invoked cautiously. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

      In this matter, it is not clear that the omission of Ms. Hopper's evaluation had no impact on the case. Ms. Hopper's observation that it was difficult for Plaintiff to keep himself on task appears consistent with other evidence in the record that suggested Plaintiff might require extra help or attention at work—evidence the ALJ dismissed because he found it to be inconsistent with the record. At Plaintiff's hearing, the vocational expert indicated that, after thirty days of training, Plaintiff would need to function independently with only "very minimal re-direction" to

maintain employment. (R. 76). Accordingly, the Court lacks the confidence required to affirm the ALJ's decision despite his failure to address Ms. Hopper's evaluation.[5]

V.   **Conclusion**

Based on the foregoing, the Court has determined that remand is appropriate for further consideration of Plaintiff's application for benefits under the Act. Because Plaintiff has neither argued nor demonstrated that he was "subjected to unwarranted hostility or bias" by the ALJ in this matter, the Court will not order remand to a different ALJ. *Bair v. Astrue*, No. 2:07-CV-750, 2008 WL 4410168, at *9 (W.D. Pa. Sept. 24, 2008) (citing *Ventura v. Shalala*, 55 F.3d 900, 904-905 (3d Cir. 1995)). Accordingly, the Court remands this matter to the Commissioner for further consideration consistent with this Order.

s/ Alan N. Bloch<br>United States District Judge

ecf:   Counsel of Record

---

[5] Plaintiff very briefly argues that Ms. Hopper's evaluation would support a finding of marked and/or extreme limitations in the broad areas of functioning that are assessed to determine whether a claimant's impairments meet or equal criteria for the presumptively disabling impairments that are listed in the regulations. (Doc. No. 14, pg. 15). However, Plaintiff does not explain exactly how Ms. Hopper's evaluation demonstrates the presence of marked or extreme limitations. Thus, the Court will not consider whether the ALJ erred in finding Plaintiff's impairments did not meet or equal one of the listed impairments. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) (explaining that "conclusory assertions are not enough" to raise an issue to the Court). The Court will leave to the Commissioner whether further consideration of Ms. Hopper's evaluation necessitates a reconsideration of the listings inquiry on remand.